EXHIBIT 1

11869.060

## IN THE DISTRICT COURT IN AND FOR MAYES COUNTY
### STATE OF OKLAHOMA

HASHPOWER LLC,                     )
an Oklahoma LLC,                   )
                                   )
                    Plaintiff,     )        Case No.  CJ-22-101
                                   )
vs.                                )
                                   )        ┌─────────────────────────────┐
SOLERGY BLOCKCHAIN,                )        │ FILED IN THE DISTRICT COURT· │
a Delaware LLC,                    )        │   MAYES CO., OKLAHOMA        │
                                   )        │                             │
                                   )        │       JUN 1 3 2022          │
                    Defendant.     )        │                             │
                                            │ JENIFER CLINTON, COURT CLERK│
                                            │ BY_____DEPUTY    │
                                            └─────────────────────────────┘

### PLAINTIFF'S PETITION

**COMES NOW** Plaintiff, Hashpower LLC, an Oklahoma limited liability company

("Hashpower"), for its causes of action against Defendant, Solergy Blockchain, LLC, a Delaware

limited liability company ("Solergy") and further alleges and states as follows:

### Parties, Venue and Jurisdiction

1.      Hashpower LLC is an Oklahoma limited liability company doing business in

Mayes County, Oklahoma.

2.      Solergy Blockchain, LLC is a Delaware limited liability company doing business

in Mayes County, Oklahoma.

3.      Jurisdiction is properly vested in this Court pursuant to 12 O.S. § 2004(F).

4.      Venue is proper in Mayes County pursuant to 12 O.S. §§ 131, 137.

### General Allegations

5.      Hashpower and Solergy (collectively, the "Parties") executed a Co-Location

Master Services Agreement (the "Agreement") made effective September 1, 2021. Under the terms

of the Agreement, Hashpower agreed to provide certain hosting, co-location, and other crypto-

mining related services located at 4038 Rocket Street, Mid-America Industrial Park, Pryor,

Oklahoma (the "Premises") in exchange for payments pursuant to the Service Order attached to the Agreement. *See* Agreement, attached as Exhibit A.

6.      On or about November 3, 2021, the Parties executed the First Amendment to the Co-Location Master Service Agreement (the "Amended Agreement"). *See* Amended Agreement, attached as Exhibit B.

7.      Shortly thereafter, Solergy defaulted under the terms of the Agreement as well as the Amended Agreement due to its nonpayment of multiple invoices

8.      In addition to Solergy's failure to satisfy its requisite payment obligations, Solergy's defaults under the Agreement and Amended Agreement include, but are not limited to: failure to achieve the "Start Host Date" after six (6) months of service; failure to provide adequate notice to Hashpower regarding any deliveries; unjustifiably permitting access to the Premises to non-permitted personnel on numerous occasions; initiating unauthorized changes to the Customer Environment without the written consent of Hashpower; failure to provide liquid immersion systems and parts pursuant to Section 1.5 of the Amended Agreement; utilizing Hashpower's buildings in an unlawful manner; and failing to pay its third-party contractors resulting in numerous Pre-Lien Notices.

9.      On May 9, 2022, Hashpower provided notice (the "Notice") to Solergy of the foregoing defaults and provided Solergy the opportunity to cure its failure to pay.

10.     On or about May 27, 2022, Solergy responded to Hashpower's Notice and unjustifiably contended that Hashpower could not charge Solergy a Power Cost Adjustment ("PCA") exceeding 10%, nor could Hashpower charge Solergy for unconsumed kilowatt-hours. However, neither the Agreement nor the Amended Agreement provide that Solergy is *only*

required to pay for its consumer kilowatt-hours. Moreover, the payments due reflect the Power Cost Adjustments rightfully owed to Hashpower.

11.     Despite Solergy's dispute regarding the PCA amounts, Solergy made various misrepresentations that it would pay portions of its outstanding invoices.

12.     To date, Solergy has failed to timely make the majority of the payments to Hashpower, if at all. As a result of Solergy's breach, Hashpower is owed $642,136.56.

## First Cause of Action
### Breach of Contract

13.     Hashpower adopts and incorporates paragraphs 1-12 as though fully restated herein.

14.     Hashpower and Solergy entered into a binding contract, *i.e.* the Agreement and Amended Agreement.

15.     Hashpower has fully complied with the terms of both the Agreement and Amended Agreement.

16.     Solergy breached the Agreement and Amended Agreement as evidenced by the defined defaults under paragraphs 8 and 9 in this Petition.

17.     As such, Hashpower has been damaged by Solergy in excess of $642,136.56.

## Second Cause of Action
### Unjust Enrichment

18.     Hashpower adopts and incorporates paragraphs 1-17 as though fully restated herein.

19.     As a result of the acts or omissions set forth herein, Solergy has been unjustly enriched to the detriment of Hashpower.

3

20.     Solergy has been utilizing Hashpower's certain hosting, co-location and other crypto-mining related services on the Premises without paying Hashpower its duly owed costs pursuant to the Service Order of the Agreement and Amended Agreement.

21.     As a direct result of such unjust enrichment, Hashpower has been damaged in excess of $642,136.56.

WHEREFORE, Plaintiff, Hashpower LLC, requests this Court find Solergy Blockchain, LLC's actions unlawful, that Plaintiff has been damaged, and is entitled to compensation for such damages in the amount of $642,136.56. Hashpower LLC further prays the Court grant attorneys' fees, interest, and the costs of this litigation and any other damages the Court deems just and equitable.

Respectfully submitted,

BARROW & GRIMM, P.C.

Trevor R. Henson, OBA #30104
Ashley F. Vinson, OBA #34812
110 West 7th Street, Suite 900
Tulsa, OK 74119
Telephone: (918) 584-1600
Fax: (918) 585-2444
thenson@barrowgrimm.com
avinson@barrowgrimm.com
*Attorneys for Plaintiff*

4

**VERIFICATION**

STATE OF OKLAHOMA    )
                     )    ss.
COUNTY OF TULSA      )

     Robert Hefner, of lawful age, being first duly sworn, upon oath deposes and states:  I am the Manager of Hashpower LLC, and the Plaintiff in the above styled and numbered action; I have read the above and foregoing Petition, know the contents thereof and that the statements and allegations contained therein are true and correct to the best of my knowledge and belief.

                                   Hashpower LLC

Subscribed and sworn to before me this 10th day of June, 2022.


                                  Rita J. McEwen
                                  Notary Public

My Commission Expires:  07/24/2025

Commission No.:  13006713

5

## CO-LOCATION MASTER SERVICE AGREEMENT

**EFFECTIVE DATE**: September 1, 2021

THIS CO-LOCATION MASTER SERVICES AGREEMENT (the "Agreement") is made and entered into on the Effective Date, by and between **Hashpower LLC**, an Oklahoma Limited Liability Company with an address located at 6608 N. Western Avenue, #482, Oklahoma City, OK 73116, and

"CUSTOMER":               Solergy Blockchain, LLC

                                     A Delaware Limited Liability Company

ADDRESS:               9595 Six Pines Dr. Suite 8210

                                     The Woodlands, TX 77380

       WHEREAS, Hashpower provides hosting, co-location, and related services to customers at the data center to be located at Mid-America Industrial Park, Pryor, Oklahoma (the "Premises").

       WHEREAS, Customer desires to place and operate certain of its computers, servers and/or equipment within the Premises (the "Equipment") for the purposes of co-locating its Equipment (the "Co-location");

       WHEREAS, Hashpower agrees to provide Customer with the services and physical portion of the Premises in which Customer's Equipment will be located (the "Customer Environment") , subject to Customer's compliance with the terms and conditions set forth herein.

       NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereby agree as follows:

1. SERVICES

    1.1. <u>Co-Location</u>: Hashpower shall provide Customer the services described on the Service Order attached hereto and incorporated herein as Exhibit A (the "Services"), the terms and conditions of which are by this reference incorporated as if fully set forth herein, for the price and on the terms as set forth on the Service Order. The parties may add additional services to this Agreement by executing a Service Order covering such services, all of which will be governed by the terms of this Agreement. Customer agrees to provide to Hashpower any information and/or documents requested by Hashpower or its Assignee, that are necessary

**EXHIBIT A**

CO-LOCATION MASTER SERVICE AGREEMENT

to provide the Services, such as Customer's configuration(s) and serial number(s) of Equipment.

1.2. <u>Delivery & Installation.</u> Except as otherwise agreed to by the parties in writing, Customer shall perform and shall be solely responsible for all fees, costs, and expenses related to the delivery, installation, operation, maintenance, and disconnection of its Equipment at the Premises. Customer shall notify Hashpower of the estimated delivery date at least fourteen (14) days in advance of delivery to the Premises. No such notice shall be required if the equipment is purchased directly from Hashpower under a separate agreement. Hashpower shall be jointly involved in the Customer's Equipment installation on the Premises, and the Equipment may be configured as reasonably requested by the Customer.

1.3. <u>Access</u>. Subject to Customer's continued compliance with the terms of this Agreement and Customer is current with respect to any payment obligations as set forth in current Service Order(s), Permitted Personnel of Customer, designated on Exhibit B which may be updated from time to time, will be provided 24/7 access to the Environment. Customer may request Non-Permitted Personnel access to the Customer Environment by providing at least forty-eight (48) hours advance notice of the date and time of Customer's planned visit. Any visits including Non-Permitted Personnel by Customer shall require escorted access by Hashpower or its authorized representative. If a visit is requested by Customer, Hashpower will use commercially reasonable efforts to arrange for such escorted access during normal business hours. Any such access will be provided to Customer's authorized personnel only and shall be subject to all security measures applicable to and/or required by the Premises. Hashpower reserves the right to deny access to anyone, and agrees to not unreasonably withhold access.

1.4. <u>Additional Services.</u> Additional services relating to the installation, maintenance, repair and/or removal of Customer's Equipment at the Premises ("Additional Service(s)") may be provided to Customer upon written request, at the rate(s) set forth in the attached Service Order or under a subsequent Service Order. Customer acknowledges and agrees that the Services, including Additional Services, may be provided and performed by Hashpower, its contractors and/or other third parties, including the operator of the Premises. In the event Customer requests Additional Services and such services are outside the scope of the Service Order, or (ii) fees for the Additional Services are not included on the Service Order, Customer shall

CO-LOCATION MASTER SERVICE AGREEMENT

be solely responsible and liable for payment of such reasonable fees charged by Hashpower for the Additional Services that are requested by the Customer.

1.5. <u>Responsibilities.</u> Hashpower shall be responsible for power infrastructure, including securing power from the local utility at the Premises, including purchasing transformers for interconnection at the Premises from 13.8kV power, as anticipated, up to $400,000 including delivery. Hashpower will also be responsible for maintenance, transformer management, general checks and maintenance of breakers and breaker panels, information technology including fiber service to the Premises, general removal of standing water on the Premises, security to the Premises, including fencing, gravel, and concrete management. Hashpower shall manage the miners once installed on the Premises, and will make available co-management of the miners to the Customer, if and when desired.

Customer shall be responsible for the purchase and delivery of fabricated containers, including full immersion fluids and other systems and parts required to safely operate full immersion containers (as planned). Customer shall also be responsible for purchase and/or delivery of the ASIC miners (S19J Pro miners, as planned) in amounts that will satisfy the total estimated power consumption on the Service Order.

2. TERM, TERMINATION, AND RENEWAL

2.1. <u>Term of Agreement</u>. The term of this Agreement shall commence on the Start Hosting Date (which shall be the date the Premises is occupied by Customer and Equipment is running) and continue for a period of two (2) years (the "Initial Term"), and upon the expiration of the Initial Term, this Agreement shall renew annually for one (1) year (jointly with the Initial Term, referred to as the "Term") at the end of each Term until terminated by either party by providing at least fifteen (15) days' prior written notice of termination to the other party prior to the expiration of the then current Term. Hashpower may terminate the Agreement if the power supply to the Premises is terminated for any reason other than non-payment.

2.2. <u>Term of Service Order(s).</u> The term of each Service Order shall commence on the service start date of the applicable Service Order and shall continue for the period set forth therein ("Service Order Initial Term"), and upon the expiration of the

CO-LOCATION MASTER SERVICE AGREEMENT

Service Order Initial Term, such Service Order shall renew automatically for successive periods equal to one (1) year each, unless terminated by either party in writing at least thirty (30) days prior to the then current expiration date.

Unless otherwise set forth herein, Hashpower, reserves the right to change its rates and or Service(s), provided during any renewal of a Service Order by notifying Customer in writing at least sixty (60) days in advance of the effective date of such change. The term of any Additional Service order entered into between the parties shall be coterminous with the Service Order, unless otherwise agreed between the parties. Any additional Service Order extending past the then-current Term of this Agreement shall be completed as if this Agreement remained fully in effect, and this Agreement shall be deemed extended through the termination date of the additional Service Order.

2.3. Agreement Subordinate. This Agreement and each Service Order is an agreement for the provision of Services only and is not intended to be, and will not constitute, a lease of real property. Therefore, Customer acknowledges and agrees that: (i) it is receiving the Services only and that it is not entitled to access, use or occupy the Premises (or such portion of the Premises in which Customer's Equipment is located) other than as may be provided herein; (ii) Customer has not been granted any real property interest in the Customer Environment or the Premises; (iii) the Equipment shall not be deemed or become fixtures in the Premises; (iv) neither Hashpower nor Customer have rights as a tenant or otherwise under any laws, regulations or ordinances relating to real property or landlords/tenants; (v) this Agreement and each Service Order is and shall at all times be subordinate to any underlying license, lease or other agreement for the Premises ("Master Agreement") between Hashpower and the owner(s)/operator(s)/lessor(s) of the Premises (the "Operator(s)"); and (vi) the termination of the Master Agreement (or any amendment, modification, renewal, or extension thereof) shall cause the automatic termination of this Agreement and all Service Order(s), without creating any default or breach by, or liability to, Hashpower or the Operator(s), unless due to a default or the intentional action of Hashpower under the Master Agreement. In no event (i) shall Customer's Equipment be security for any obligation of Hashpower or Operator(s).

2.4. Casualty; Taking. In the event of any damage, destruction or condemnation of any part of the Premises or the building in which such Premises is located, Customer shall acquiesce and be bound by any action taken by or agreement entered into

CO-LOCATION MASTER SERVICE AGREEMENT

between Hashpower and Operator. Customer hereby waives and releases any claims or rights to make a claim as a tenant or subtenant that it may have with respect to its Equipment or any other property located in the Premises. In the event the Premises becomes the subject of a taking by eminent domain by any authority having such power and such taking has a material impact on this Agreement, either party shall have the right to terminate this Agreement by providing written notice to the other with no further liability to the other party. If Customer terminates this Agreement pursuant to this paragraph, Hashpower agrees that Customer shall arrange freight pick up for its Equipment for delivery anywhere in the continental USA within ten (10) days of receiving Customer's request.

2.5. Post-Termination. Upon expiration or termination of this Agreement, Customer agrees to remove the Equipment and other property at Customer's sole expense within ten (10) days.

3.  FEES AND PAYMENT TERMS

3.1. Hosting Fees. Customer shall pay hosting fees equal to $0.060 per kilowatt-hour (kWh) to Hashpower (the "Fees"). These hosting fees will encompass the required power costs and the management duties as defined within this Agreement. The Fees are included in Exhibit A, Service Order.

In the event that additional Power Cost Adjustments ("PCA") are levied by the utility to Hashpower, the Customer agrees to pay, and Hashpower agrees to pass along at cost, the Power Cost Adjustments. However, in no event shall PCA increase the rate charged to the Customer by greater than 10% for a given month. Costs of a PCA greater than 10% of the rate charged to the Customer for a given month shall be born by Hashpower.

3.2. Payment Terms. Unless otherwise provided in the applicable Service Order, the monthly recurring billing for the Services shall commence upon the date the Customer Environment is made available for Customer's use and all Fees shall be payable, within seventy-two (72) hours of receipt,through wire transfer to Customer on a monthly basis.If payment is not received within 72 hours, Hashpower reserves the right to suspend its services until payment is received in full. The first month of Service may be prorated.

CO-LOCATION MASTER SERVICE AGREEMENT

3.3. <u>Taxes</u>. Hashpower will be responsible for all real estate taxes.  All payments required by this Agreement are exclusive of any federal, state, municipal or other governmental excise, sales, value-added and occupational taxes and other levies, all of which Customer shall be responsible for, and will pay in full, other than taxes based on Hashpower's net income.

3.4. <u>Late Payments</u>. Customer will be deemed to be in default hereunder if payment is not received within ten (10) days after the date of such invoice and in addition to its other remedies (including suspending service), Hashpower may charge Customer an interest rate equal to the lesser of 1-1/2% per month or the maximum amount permitted by the law.

3.5. <u>Reimbursement</u>. Customer agrees to reimburse Hashpower for all reasonable repair or restoration costs associated with damage or destruction caused by Customer, its personnel, its agents or its suppliers/contractors or Customer's visitors during the Term or any renewal or as a consequence of its removal of the Equipment or property installed in the Customer Environment, unless such damage or destruction is caused by Hashpower or Operator(s), or their personnel, agents, suppliers, contractors or invitees.

3.6. <u>Obligations</u>. All Fees and other sums which are or may hereafter be owed to Hashpower by Customer under this Agreement and any Service Order including, without limitation, interest, late charges and reasonable attorney's fees and other costs of collection shall hereinafter be referred to as Customer's "Obligations". In order to secure the payment and performance of the Obligations, Customer hereby grants to Hashpower a security interest, within the meaning of the Article 9 of the Uniform Commercial Code (the "UCC") in all Equipment, cable, wiring, connecting lines and other installations, equipment or property of the Customer now or hereafter installed or placed in the Premises and directly owned by the Customer. Hashpower shall, however, have no security interest in equipment owned by third parties or the clients of the Customer.The Parties agree that the Uniform Commercial Code shall not apply to the Agreement.

3.7. Customer will be responsible for insurance of their Equipment.

3.8. Hashpower shall have Customer listed as an additional insured on Hashpower Commercial General Liability Policy.

4. ADDITIONAL TERMS GOVERNING INSTALLATION AND OPERATION OF EQUIPMENT, SERVICE LEVELS

CO-LOCATION MASTER SERVICE AGREEMENT

4.1. <u>Changes.</u> Customer shall not make any construction changes or material alterations to the interior or exterior portions of the Customer Environment, including any cabling or power supplies for the equipment, without obtaining Hashpower written approval, not to be unreasonably withheld.  Notwithstanding the foregoing, and subject to the Master Agreement, Customer may be permitted to make minor routine cable and wiring alterations for Customer's Equipment, provided, that it does not materially alter the overall design (as determined by Hashpower or the Operator(s) in their reasonable opinion) or require any structural modifications or, which would constitute an alteration requiring approval by the Operator(s) under the Master Agreement. In the event any alteration is requested by Customer requiring the approval of the Operator(s), Hashpower will use commercially reasonable efforts to obtain the consent of the Operator(s) of Customer's requested alteration(s). The Customer Environment, installation of Equipment and any access granted to the Premises shall at all times be subject to Customer's adherence to the generally accepted industry standards, security rules and rules of conduct established by Hashpower or the Operator(s) of the Premises.

4.2. <u>Maintenance</u>. Maintenance and operation of the Premises will be paid by Hashpower. Customer acknowledges that the Services may be temporarily interrupted or suspended, from time to time, (i) as may be required by law, rule or regulation, (ii) due to reasons beyond Hashpowers control, or (iii) for maintenance, inspection and/or repair, as determined by Hashpower or the Operator(s) in its and their sole and reasonable judgement.

4.3. <u>Power Guarantee</u>. Except for interruptions in the delivery of power to the Equipment caused by (a) maintenance performed at the Premises, (b) maintenance or repairs performed to Equipment, (c) force majeure conditions, or (d) a default by Customer (e.g. non-payment), Hashpower shall use commercially reasonable efforts to obtain uninterrupted power supply to the Equipment during the Term of this Agreement ("Power Guarantee"). In the event there is a service interruption due to a power failure other than for force majeure ("Downtime") and such Downtime exceeds Twenty-two (22) hours or more in a calendar month, Customer shall receive a credit equal to one (1) day's applicable Service Order's monthly recurring charges for Co-Location for every Twenty-two (22) hours of Downtime. For the purpose of determining the amount of any credit, Downtime will be deemed to commence when Hashpower opens a "Deficiency ticket" to

CO-LOCATION MASTER SERVICE AGREEMENT

track such Downtime and will be deemed to end when Hashpower has restored Service and closed the applicable "Deficiency ticket". A deficiency ticket will be opened within a reasonable period of time following Hashpower discovering the power outage or Customer notifying Hashpower of the power outage. The Customer will not be entitled to receive any credit if (i) Customer is not in compliance with the Agreement, or (ii) Customer is more than 30 days late in its invoice payment.

5.  DEFAULT

5.1. <u>Event of Default by Customer</u>. The occurrence of any one or more of the following shall constitute an "Event of Default" by Customer under this Agreement : (a) Customer, for any reason, fails to pay Hashpower any Fees or any other amounts due hereunder when due; (b) Customer, for any reason, fails to pay to any other person or entity to whom Customer is required by the Agreement to make payment of any amount required by the Agreement to be paid, or (c) Customer fails to perform any obligation or covenant set forth in this Agreement, and such failure of  (a), (b) or (c) above is not cured within ten (10) days following receipt of notice thereof.

5.2. <u>Rights in the Event of Default by Customer</u>. In addition to the rights and remedies granted to Hashpower in this Agreement including, but not limited to, the right to charge and collect interest under Section 3.4, and all other rights and remedies available to Hashpower under applicable law, upon the occurrence of an Event of Default by Customer, all obligations of Hashpower to provide to Customer the Services and use of or access to the Premises shall immediately and automatically terminate without further notice to Customer and Hashpower shall have the right to: (i) cease providing the Services to Customer, including access to or use of the Premises, and (ii) remove the Equipment from the Premises after notice to Customer in accordance with Section 5.4 and 5.5 below; and (iii) terminate this Agreement, subject to the continuing rights of Hashpower to require payment of all Obligations, charges and other amounts due, and to exercise the remedies provided in Section 5.4 below.

5.3. <u>Termination Obligations</u>. Customer agrees that, upon the cancellation, expiration or termination of this Agreement due solely to an Event of Default by Customer hereunder, Customer shall, within ten (10) business days, make payment in full on all obligations then due and owing under this Agreement, including all outstanding

CO-LOCATION MASTER SERVICE AGREEMENT

Fees, charges, interest, late charges and other amounts, and within thirty (30) days of receipt of written notice from Hashpower, remove or have removed, at Customer's sole cost and expense, all Equipment and all property installed or placed by or for Customer in the Premises and restore those portions of the Premises damaged by such removal to their original condition as it existed immediately prior to the installation or placement of such Equipment and property.

5.4. <u>Right to Remove Equipment</u>. If Customer fails to promptly make full payment to Hashpower of all Obligations hereunder and fails to remove any Equipment or other property as set forth in Section 5.3 above, or if Hashpower has the right to remove the Equipment as set forth in Section 5.1 above, then, to the fullest extent permitted by law, Hashpower may, at Customer's expense: (i) remove and store such Equipment and items; and (ii) restore those portions of the Premises damaged by such removal to their original condition as it existed immediately prior to the installation or placement of such items. All reasonable costs and expenses incurred in connection with (i), and (ii) in the preceding sentence shall be included within the meaning of "Obligations".

5.5. <u>Customer's Removal of Equipment</u>. Notwithstanding anything to the contrary contained in this Agreement, Customer shall not be permitted to remove any of Customer's Equipment from the Customer Environment or Premises at any time when Customer is subject to an Event of Default, delinquent in meeting any of its payment obligations or is otherwise in breach of any other material term under this Agreement. Full payment shall be a condition of Customer receiving access to the Customer Environment and Premises and Customer's removal of its Equipment. Notwithstanding any language set forth in this Agreement, (i) Customer shall have a period of thirty (30) days after Customer's receipt of written notice from Hashpower to pay in full the Fees then owing and enter upon the Premises or such other location where Customer's Equipment may be stored and remove and take sole possession of Customer's Equipment and (ii) during such thirty (30) day period Hashpower shall be prohibited from exercising any right or remedy granted hereunder, under the Uniform Commercial Code, or at law or in equity relating to the disposal or possession of Customer's Equipment.

5.6. <u>Payment upon Termination</u>. Upon the termination or cancellation of this Agreement due to an uncured Event of Default hereunder by Customer, all Fees and other reasonable costs, expenses and amounts for the Services and any other

CO-LOCATION MASTER SERVICE AGREEMENT

obligations incurred through the date of such Event of Default shall be immediately and automatically due and payable, such that Customer shall pay all accrued and unpaid charges incurred through the date thereof.

5.7. <u>Event of Default by Hashpower</u> The failure by Hashpower to perform any obligation or covenant set forth in this Agreement, if the same is not cured within ten (10) days following Hashpower receipt of written notice thereof, shall constitute an "Event of Default" by Hashpower. Upon the occurrence of such Event of Default by Hashpower, Hashpower agrees to shipCustomer's installed Equipment to Customer, in the continental USA.Customer upon request at the termination of this Agreement at Hashpower's sole cost and pay to Customer an amount equal to any Fees and other amounts paid by Customer to Hashpower hereunder relating to the period of time subsequent to the Event of Default and which Service was not provided to Customer.

5.8. <u>Representations & Warranties</u>. Customer represents and warrants that: (a) Customer has all requisite right, power and authority to execute, deliver, and perform its obligations under this Agreement; (b) the entering into and performance of this Agreement will not violate any judgment, order, law, or regulation applicable to Customer; and (c) there are no actions, suits, or proceedings pending, or to the knowledge of Customer, threatened, before any court or administrative agency, arbitrator or governmental body which will, if determined adversely to Customer, materially adversely affect its ability to perform its obligations under this Agreement or any related agreement to which it is a party. The foregoing representations and warranties shall survive the execution and delivery of this Agreement and any amendments hereto.

5.9. <u>Limitation of Liability</u>. Notwithstanding any provision of this Agreement to the contrary and to the fullest extent permitted by law (a) Hashpower total and aggregate liability to the Customer for any reason whatsoever arising out of or relating to this Agreement or the Services, Premises or Customer Environment shall not in any event exceed the total amount of Fees actually paid to Hashpower by Customer under this Agreement or the Service Order(s) in the 3 month period immediately preceding the event giving rise to the liability; and (b) in no event shall Hashpower be liable to Customer for any indirect, special, or consequential damages, lost profit, injury to business or customers, the loss of prospective profit or anticipated sales which result from any outages of the Services or any other failure of connectivity or any other failures provided however, the limitations on

CO-LOCATION MASTER SERVICE AGREEMENT

liability set forth in clause (a) and (b) above shall not apply to an intentional or willful default by Hashpower hereunder.

6.  MISCELLANEOUS

6.1. Independent Contractor. Hashpower and Customer are independent contractors and neither party shall be deemed an employee of the other. Neither party shall be responsible for the acts or omissions of the other party hereto nor the acts or omissions of the employees of the other party hereto, except for acts or omissions of the other party or such other party's employees caused by the negligent or willful acts or omissions of such party. Neither party shall have the authority to speak for, represent or obligate the other party hereto in any way without either the express prior written consent of or written ratification by the other party.

6.2. Force Majeure. Neither party shall be responsible for any failure to perform its obligations under this Agreement, if such failure is caused by war, labor strike, terrorist act, fire, flood, earthquake, extreme weather, act of government or other events similar events beyond the reasonable control of the other party, which includes, but is not limited to, interruptions in power delivery from the utility. If a Force Majeure event continues for a period of 30 days or longer, either party may terminate this Agreement upon written notice to the other party and without further liability.

6.3. Applicable Law; Venue. This Agreement shall be governed and construed by the laws of the State of Oklahoma without giving effect to any choice or conflict of law provision or rule that would require or permit the application of the laws of any jurisdiction. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts of the State of Oklahoma for the purposes of any proceedings arising out of this Agreement.

6.4. Limitation on Claims. Any cause of action arising out of or related to this Agreement must be brought no later than one (1) year after the cause of action has accrued.

6.5. No Waiver. No provisions hereof may be waived except by an agreement in writing signed by the parties. A waiver of any term or provision hereof shall not be construed as a waiver of any other term or provision hereof.

CO-LOCATION MASTER SERVICE AGREEMENT

6.6. <u>Binding Effect</u>. This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors, heirs and permitted assigns.

6.7. <u>Assignment</u>. Neither party may assign this Agreement or any portion here of without the other party's prior written consent, which consent shall not be unreasonably withheld. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. In the event of an assignment by Customer or Hashpower, the assignee shall be of comparable or better credit standing than the assignor, as determined by the other party hereto in its reasonable opinion.

6.8. <u>Survival</u>. The rights and obligations of the parties in this Agreement which, by its nature, should survive termination or expiration of this Agreement, will survive any such termination or expiration of this Agreement.

6.9. <u>Severability</u>. In the event any one or more of the provisions of this Agreement is held to be unenforceable or invalid under applicable law: (i) such unenforceability or invalidity shall not affect any other provision of this Agreement; (ii) this Agreement shall be construed as if said unenforceable or invalid provision had not been contained herein; and (iii) the parties shall negotiate in good faith to replace the unenforceable or invalid provision by such as has the effect nearest to that of the provision being replaced.

6.10. <u>Entire Agreement; Amendments</u>. This Agreement (including its Exhibit(s) and Service Orders) is the sole agreement between the parties relating to the subject matter hereof and supersedes all prior understandings, writings, proposals, representations or communications, oral or written, of either party. This Agreement and the Exhibit(s) and Service Order attached hereto, shall not be modified or amended except by a further written document signed by the parties.

6.11. <u>Conditions</u>. The obligation of Hashpower to provide access to the Premises and begin providing Services under this Agreement or as set forth in the Service Order is conditioned upon Hashpower's entering into a lease with MidAmerica Industrial Park ("MAIP") or purchasing the Hammill Trucking site at MAIP, and purchase power agreement with Grand River Dam Authority ("GRDA") on terms acceptable to Hashpower. If both agreements described above are not secured by November 1, 2021, then this Agreement shall terminate (unless extended in writing by agreement of the parties) and neither party shall have any claim against the other party for costs, damages, compensation or otherwise.

CO-LOCATION MASTER SERVICE AGREEMENT

**IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date by their respective duly authorized officers.**

**Solergy Blockchain, LLC**

By: Mark Kingsley

Title: Chief Executive Officer

Email for Notices:

jesse@solergyblockchain.com

Phone: 512-529-8591

Signature:

**Hashpower LLC**

By:  Robert Hefner V

Title:  Chief Executive Officer

Email for Notices:

robert@hefner.energy

Phone: 405-594-7564

Signature:

CO-LOCATION MASTER SERVICE AGREEMENT

EXHIBIT A
SERVICE ORDER

This Service Order is made pursuant to the Co-Location Services Agreement, between Hashpower LLC and Customer. The purpose of this Service Order is to document the scope of the services to be performed, the fees, and other rights and obligations of the parties. This Service Order is subject to all terms and conditions in the Co-Location Services Agreement. Capitalized terms used, but not defined in this Service Order, will have the meanings described in the Co-Location Services Agreement. In the event of a conflict between the terms of the Co-Location Services Agreement and the terms of this Service Order, the terms of this Service Order shall control.

| Service Order | 1009 | Customer | Solergy Blockchain |
|---|---|---|---|
| Date | September 1, 2021 | Address | 9565 Six Pines Drive, Suite 8210, The Woodlands, TX 77380 |
| Initial Term | Two (2) years beginning on the Start Hosting Date | Phone | 512-529-8591 |
| Contact | Jesse | Email | jesse@solergyblockchain.com |
| Site | MAIP | Power (MW) | 10 MW |
| Equipment | Containers | Start Hosting Date | ASAP (est. Nov 1, 2021) |

Terms of Service:

| UNIT | DESCRIPTION | POWER | RATE | BILLING | TOTAL |
|---|---|---|---|---|---|
| 1 | Hosting Fees | 10 MW | $60.00 PER MWH | MONTHLY, RECURRING | Est. $437,760.00, based on usage |
| 1 | Deposit, to be paid within ten (10) days of execution of this Agreement | 10 MW | $1.35 million (Hashpower to provide Customer details of site improvement costs) | One-Time. Credit against first and last months invoices (non-refundable in the event Customer doesn't take Service) | $1.35 million |
| 1 | PCA | Based upon usage | | MONTHLY, RECURRING | Currently $0.00, but subject to change during the Term |

## CO-LOCATION MASTER SERVICE AGREEMENT

Service Order, Additional Terms and Conditions:

Additional Services: Additional labor services requested by Customer and not otherwise provided above shall be charged on an hourly basis at the rate of $75.00 per hour. Cost of any parts required will be charged separately, after having received Customer's written approval for purchase of such parts.

All charges reflected herein are considered Fees pursuant to the Co-Location Services Agreement.

By signing below, the parties agree that this Service Order defines the Services to be provided and fees to be collected by from Customer.

Solergy Blockchain, LLC

Signature:

Hashpower, LLC

Signature:

CO-LOCATION MASTER SERVICE AGREEMENT

Exhibit B
Permitted Personnel

| NAME | COMPANY |
| --- | --- |
| Jason Novack | Solergy Blockchain, Inc. |
| Jesse Atkinson | Solergy Blockchain, Inc. |
| James Jewell II | Solergy Blockchain, Inc. |
| Mark Kingsley | Solergy Blockchain, Inc. |
| Christopher Thomas | Solergy Blockchain, Inc. |
| Joseph Kiwak | Solergy Blockchain, Inc. |

By signing below, the parties agree to the list of Permitted Personnel to have 24/7 access to the Premises on behalf of the Customer.

Solergy Blockchain, LLC                                    Hashpower LLC

Signature:                                                  Signature:

# FIRST AMENDMENT TO THE CO-LOCATION MASTER SERVICE AGREEMENT

First Amendment to the Co-Location Master Service Agreement dated September 1, 2021 (the "**Amendment**"), by and between Hashpower LLC, an Oklahoma Limited Liability Company with an address of 6608 N. Western Avenue, #482, Oklahoma City, OK 73116 ("**Hashpower**"), and Solergy Blockchain, LLC, a Delaware Limited Liability Company, with an address of 9595 Six Pines Drive, Suite 8210, The Woodlands, TX, 77380 (hereto referred as "Customer") ("**Customer**", and together with Hashpower, the "**Parties**", and each, a "**Party**").

WHEREAS, the Parties have entered into a Co-Location Master Service Agreement, dated September 1, 2021 the "**Existing Agreement**"); and

WHEREAS, the Parties hereto desire to amend the Existing Agreement to adjust certain terms and clauses that are subject to the conditions set forth herein; and

WHEREAS, pursuant to Section 6.10 of the Existing Agreement, the Amendment contemplated by the Parties must be contained in a written agreement signed by both parties.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.     <u>Definitions</u>. Capitalized terms used and not defined in this Amendment have the respective meanings assigned to them in the Existing Agreement.

2.     <u>Amendments to the Existing Agreement</u>. As of the Effective Date (defined below), the Existing Agreement is hereby amended or modified as follows:

    (a)    The "Premises" shall now be defined as 4038 Rocket Street, Pryor Oklahoma.

    (b)    Section 1.5 shall be added to the Existing Agreement and shall read as follows:

        1.5 <u>Co-Management of Miners</u>: Customer is exercising their right to co-manage the miners and therefore takes full responsibility of the miners, their upkeep and maintenance. Hashpower is in release from all liability of mismanagement of miners, provided that Hashpower cannot manage or operate the miners without prior written approval from Customer unless in Default as described in Section 5 of this Agreement.

    (c)    Section 2.1 of the Existing Agreement is hereby deleted in its entirety and replaced with the following:

        2.1 <u>Term of Agreement</u>. The term of this Agreement shall commence on the Start Hosting Date and continue for a period of three (3) years (the "Initial Term").

**EXHIBIT B**

    (d)      Section 2.2 of the Existing Agreement is hereby deleted in its entirety and replaced with the following:

        2.2 <u>Term of Service Order(s)</u>. The term of this Agreement shall commence on the Start Hosting Date (see below for definition of **"Start Hosting Date"**) , of the applicable Service Order and shall continue for the period set forth therein ("Service Order Initial Term"). The **"Start Hosting Date"** shall be defined as the date in which Customer is using 4.5 MW of power provided by Hashrate.

    (e)      Section 3.1(a) shall be added to the Existing Agreement and shall read as follows:

        3.1(a) <u>Overclock Hash Rate Fee</u>: Included as part of the Hosting Fee, Customer has accepted, in lieu of cash, a Hash Rate Fee. Customer shall pay Overclock Hash Rate Fee to Hashpower equal to 7.14% of the overclock hash rate generated by the Customer at the Premises for three (3) containers each containing 240 miners with average nameplate capacity of 100 Th/s.

        A partial fee of 2.38% will be applied from the date the first container is energized until. The full Overclock Hashrate Fee will be paid starting in month two (2) after the first liquid immersion container is energized.

        Hashower will receive the Overclocking Hash Rate Fee, in BTC and not USD, to a wallet designated by Hashpower, paid monthly.

        If the total capacity at the Premises increases to 10MW, and Hashpower negotiates and receives the GRDA BTC Rider ($4.00) for Customer's power, then the TH/s overclock will be reduced by 4.76%. If the GRDA includes the EDR Credit ($2.00) for Customer's power, then the TH/s share then the Overclock Hash Rate Fee shall be reduced by 2.38%.

    (f)      Section 3.1(b) shall be added to the Existing Agreement and shall read as follows:

        3.1(b) <u>Power Cost Adjustments</u>: In the event that additional Power Cost Adjustments ("PCA") are levied by the utility to Hashpower, the Customer agrees to pay, and Hashpower agrees to pass along at cost, the Power Cost Adjustments. However, in no event shall PCA increase the rate charged to the Customer by greater than 10% for a given month. Costs of a PCA greater than 10% of the rate charged to the Customer for a given month shall be born by Hashpower.

        Customer agrees to Power Cost Adjustments of 0.02972 and accepts this anticipated charge to begin service. Customer acknowledges, assuming 5,000 kW of power, the anticipated monthly invoice using this PCA is approximately $239,500.

    (g)      Section 3.9 shall be added to the Existing Agreement and shall read as follows:

        3.9 <u>Deposit</u>: A Deposit of Seven-Hundred Sixty Thousand Dollars ($760,000.00) shall be paid by Customer to Hashpower. For purposes of this agreement, $438,000 is allocated to two months power cost, $160,000 is estimated for the transformers, and $162,000 for site development.

Hashpower agrees to take credit of the first two full months (calculated as the first two months from Start hosting Date) instead of the of the final two months of Customer Hosting Fees. In exchange, Customer agrees that no portion of the Deposit will be refunded upon conclusion of this 1st Amendment to Co-Location Agreement.

Hashpower acknowledges that the Deposit has been paid, in full, by Customer.

(h) Section 5.2 shall be amended to add the following language at the end of Section 5.2 which shall read as follows:

In addition to the Rights in the Event of Default by Customer as described herein, in the Event of Default and at the discretion of Hashpower, Hashpower shall have the right to assume use of the equipment to mine for bitcoin in Hashpower's name until the revenues from mining have paid back all money owed, including interest, or the Default is otherwise cured, at which point the use of the equipment will transfer back to the Customer.

(i) Section 6.11 shall be added to the Existing Agreement and shall read as follows:

6.11 Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(j) Exhibit A (the "Services") referenced in Section 1.1 of the Existing Agreement is hereby deleted in its entirety and replaced by the attached Exhibit A.

3. Date of Effectiveness; Limited Effect. This Amendment will be deemed effective as of September 1, 2021 (the "**Effective Date**"). Except as expressly provided in this Amendment, all of the terms and provisions of the Existing Agreement are and will remain in full force and effect and are hereby ratified and confirmed by the Parties. Without limiting the generality of the foregoing, the amendments contained herein will not be construed as an amendment to or waiver of any other provision of the Existing Agreement or as a waiver of or consent to any further or future action on the part of either Party that would require the waiver or consent of the other Party. On and after the Effective Date, each reference in the Existing Agreement to "this Agreement," "the Agreement," "hereunder," "hereof," "herein," or words of like import will mean and be a reference to the Existing Agreement as amended by this Amendment.

4. Representations and Warranties. Each Party hereby represents and warrants to the other Party that:

(a) It has the full right, power, and authority to enter into this Amendment and to perform its obligations hereunder and under the Existing Agreement as amended by this Amendment.

(b) The execution of this Amendment by the individual whose signature is set forth at the end of this Amendment on behalf of such Party, and the delivery of this Amendment by such Party, have been duly authorized by all necessary action on the part of such Party.

(c) This Amendment has been executed and delivered by such Party and (assuming due authorization, execution, and delivery by the other Party hereto) constitutes the legal, valid, and binding obligation of such Party, enforceable against such Party in accordance with its terms.

5.      Miscellaneous.

        (a)      Agreement Unmodified.  Except to the extent expressly provided herein, the Agreement shall remain unmodified and in full force and effect in accordance with its terms. All references in the Agreement to "this Agreement" or words of similar import shall be deemed to refer to the Agreement as amended by this Amendment.  In the event of any conflict or inconsistency between the terms of the Agreement and the terms of this Amendment, the terms of this Amendment shall control.

        (b)      Entire Agreement.  This Amendment, together with the Agreement, contains the entire agreement between Seller and Buyer with respect to the matters stated herein, and no prior conversations, undertakings, representations, promises, inducements, warranties or statements not reduced to writing and expressly set forth herein shall be effective for any purpose.

        (c)      Execution; Delivery.  This Amendment may be executed and delivered in several counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same document.  Electronic signatures may be used in place of original signatures on this Amendment.  The parties hereto intend to be bound by the signatures on the electronic document, are aware that the other party will rely on the electronic signatures, and hereby waive any defenses to the enforcement of the terms of this Amendment based on the form of signature.  Delivery of an executed signature page of this Amendment by facsimile or by .pdf, .jpeg, .TIFF or other electronic format attached as an electronic mail attachment shall be effective as delivery of a manually executed counterpart hereof.

        (d)      Severability.  If any term or provision of this Amendment or the Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Amendment and the Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Amendment and the Agreement shall be valid and be enforced to the fullest extent permitted by applicable law.

        (e)      Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*(Signature Page to Follow)*

IN WITNESS WHEREOF, the Parties have executed this Amendment on the date first written above.

Hashpower LLC

By Robert A. Hefner (Nov 3, 2021 15:05 CDT)    Nov 3, 2021

Name: Robert Hefner

Title: Chief Executive Officer


Solergy Blockchain, LLC

By _____    Nov 3, 2021

Name: Mark Kingsley

Title: Chief Executive Officer

## CO-LOCATION MASTER SERVICE AGREEMENT

### EXHIBIT A

### SERVICE ORDER

This Service Order is made pursuant to the Co-Location Services Agreement, between Hashpower LLC and Customer. The purpose of this Service Order is to document the scope of the services to be performed, the fees, and other rights and obligations of the parties. This Service Order is subject to all terms and conditions in the Co-Location Services Agreement. Capitalized terms used, but not defined in this Service Order, will have the meanings described in the Co-Location Services Agreement. In the event of a conflict between the terms of the Co-Location Services Agreement and the terms of this Service Order, the terms of this Service Order shall control.

| Service Order | 1009 | Customer | Solergy Blockchain |
|---|---|---|---|
| Date | November 1, 2021 | Address: | 9565 Six Pines Drive, Suite 8210, The Woodlands |
| Initial Term | Three (3) years | Phone | 512-529-8591 |
| Contact | Jesse Atkinson | Email | Jesse@solergyblockhcain.com |
| Premises | 4038 Rocket Street Pryor, OK 74361 | Power (MW) | 5 |
| Equipment | Containers | Start Hosting Date | ASAP (est. Nov 15, 2021) *See Section 2.2 of First Amendment |

Terms of Service:

| Unit | Description | Power | Rate | Billing | Amount |
|---|---|---|---|---|---|
| 1 | Power and hosting for 5 MW of miners | 5 MW | $60.00 per mWh | Monthly, recurring | $215,476 (est.) |
| 1 | Deposit, to be paid within 72 hours of execution of this agreement | 5 MW | $760,000.00 | One-time *see Section 3.9 of First Amendment | $760,000.00 |
| 1 | Utility Power Cost Adjustments (if applicable) | 5 MW | At cost *see section 3.1(b) of First Amendment | Monthly, recurring | variable during the Term |

# 21-11-02 1st Amendment to Co-Location Agreement v5 clean

Final Audit Report                                            2021-11-03

| | |
|---|---|
| Created: | 2021-11-03 |
| By: | Jesse Atkinson (jesselatkinson@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA6svYwuv6BbEr48U0sX7GV-yX3dLFefBo |

## "21-11-02 1st Amendment to Co-Location Agreement v5 clean" History

🖰 Document created by Jesse Atkinson (jesselatkinson@gmail.com)
    2021-11-03 - 7:17:27 PM GMT- IP address: 64.207.228.4

🖂 Document emailed to Mark H. Kingsley (mark@solergyblockchain.com) for signature
    2021-11-03 - 7:19:48 PM GMT

🖰 Email viewed by Mark H. Kingsley (mark@solergyblockchain.com)
    2021-11-03 - 8:00:13 PM GMT- IP address: 45.131.195.107

🖋 Document e-signed by Mark H. Kingsley (mark@solergyblockchain.com)
    Signature Date: 2021-11-03 - 8:01:56 PM GMT - Time Source: server- IP address: 45.131.195.107

🖂 Document emailed to Robert A. Hefner V (robert@hefner.energy) for signature
    2021-11-03 - 8:02:00 PM GMT

🖰 Email viewed by Robert A. Hefner V (robert@hefner.energy)
    2021-11-03 - 8:02:09 PM GMT- IP address: 69.110.49.192

🖋 Document e-signed by Robert A. Hefner V (robert@hefner.energy)
    Signature Date: 2021-11-03 - 8:05:38 PM GMT - Time Source: server- IP address: 69.110.49.192

🕑 Agreement completed.
    2021-11-03 - 8:05:38 PM GMT

 Adobe Sign